United States District Court
Southern District of Texas

**ENTERED**

May 11, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| TEANNA KASARDA, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:25-cv-00183 |
| | § | |
| FAY SERVICING, LLC, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is a motion for summary judgment filed by Defendants U.S. Bank Trust National Association as Trustee of Citigroup Mortgage Loan Trust 2018-RP2 (the "Trustee") and Fay Servicing, LLC. *See* Dkt. 14. Having reviewed the briefing, the record, and the applicable law, I recommend that Defendants' motion for summary judgment be granted.

## BACKGROUND

This dispute concerns the attempted foreclosure of 8737 Varner Drive, West Columbia, Texas 77486 (the "Property"), a property inherited by Plaintiff Teanna Kasarda. Melissa Tomlin originally purchased the Property in 2002 with an adjustable-rate mortgage. *See* Dkt. 14-2. Tomlin executed a promissory note to the original lender, Decision One Mortgage Company, LLC, and its assigns for the original principal amount of $128,500. Under the terms of that note, Tomlin agreed that her interest rate would never be less than 8.55% but could be as great as 14.55%. *See id.* at 1.[1] Tomlin executed a deed of trust and recorded it in the property records of Brazoria County, Texas. *See* Dkt. 14-3.

---

[1] At the lowest interest rate of 8.55%, Tomlin would have paid about $226,500 in interest alone over the life of a 30-year note. At the highest possible interest rate of 14.55%, the interest alone over a 30-year term would exceed $442,000. Either way, Tomlin signed up to pay *substantially* more in interest than the principal amount over the life of her loan.

Tomlin died on November 1, 2016. In 2017, Kasarda, acting as the executrix of Tomlin's estate, obtained a Loan Modification Agreement to allow Kasarda to bring the loan current and retain the Property. The Loan Modification Agreement capitalized unpaid amounts—including arrearages and accrued interest—into a new principal balance of $153,970.27 and extended the maturity date of the loan to 2057. *See* Dkt. 14-6 at 2. The Loan Modification Agreement also provided that Kasarda would make interest-only payments for the first five years. Finally, the Loan Modification Agreement incorporated the adjustable rate from the original note, meaning that Kasarda could potentially pay up to 14.55% interest on $153,970.27 for 35 years, following the first five years of interest-only payments. Thus, when Kasarda executed the Loan Modification Agreement, the worst-case-but-contractually-permitted scenario would produce a total lifetime repayment of approximately $839,294 on what was originally a loan for only $128,500.[2]

On December 27, 2024, Fay, acting as the mortgage servicer for the Trust, sent a Notice of Default to Kasarda, stating that she was in default and that $10,962.08 must be paid by January 31, 2025, to cure the default. *See* Dkt. 14-7 at 2. On April 15, 2025, Fay sent a Notice of Acceleration to Tomlin's estate and filed a Notice of Substitute Trustee's Sale with respect to the Property, to be held on June 3, 2025, asserting that a balance of $174,070.53 was due. *See* Dkt. 1-4 at 2. On June 2, 2025, Kasarda filed a petition in state court against Defendants, seeking a declaration as to the amounts owed on the Note and an injunction against foreclosure. *See id.* at 3.

On June 12, 2025, Defendants removed the case to federal district court based on diversity jurisdiction. In their notice of removal, Defendants

---

[2] During the first five years of interest-only payments, Kasarda paid approximately $30,794 without reducing the principal balance. Then, beginning in 2022, if the interest rate reset to the maximum-permitted rate of 14.55% and the remaining $153,970 principal amortized over the remaining 35 years, the monthly principal-and-interest payment would be approximately $1,925 a month, not including escrow amounts. Over 35 years, that would amount to approximately $808,500 in principal and interest payments.

acknowledged the potential that at least one member of Fay is not diverse from Kasarda but asserted that Fay's citizenship should be disregarded for the purposes of ascertaining diversity because "Fay is a nominal party and/or has been improperly joined." Dkt. 1 at 3. In the joint discovery/case management plan, the parties indicated that they agreed as to the basis for this court's jurisdiction, including that Fay was improperly joined. *See* Dkt. 8 at 2. Defendants now move for summary judgment.

**SUBJECT MATTER JURISDICTION**

Before reaching the merits of the pending summary judgment motion, I must address whether this court has jurisdiction. Defendants removed this case to federal court based on diversity jurisdiction. *See* Dkt. 1 at 2. Kasarda is a citizen of Texas. The Trustee, a national bank, is a citizen of Delaware because that is where its main office is located. Fay, however, is a limited liability company that may have a member in the chain of ownership who is a Texas citizen. *See id*. at 3. Defendants do not contend that Fay is diverse in citizenship from Kasarda. Rather, Defendants argue that Fay is a nominal party or improperly joined, so that its presence in the suit does not destroy complete diversity. *See id*.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, (1994) (cleaned up). Parties "may neither consent to nor waive federal subject matter jurisdiction." *See Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999). Where jurisdiction is in question, federal courts must "examine the basis of jurisdiction sua sponte, even on appeal." *Id.*

"The test of whether or not a named defendant is a nominal party is . . . whether in the absence of the defendant, the court can enter a final judgment consistent with equity and good conscience which would not be in any way unfair or inequitable to plaintiff." *Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen & Assistants' Local 349, Intern. Printing Pressmen & Assistants' Union*

*of N. Am.*, 427 F.2d 325, 327 (5th Cir. 1970) (cleaned up). Here, Kasarda seeks a judicial determination of what is owed under the loan and to enjoin foreclosure on the Property. Thus, the question is whether the court can determine the amount owed and enjoin foreclosure without Fay's involvement in the case.

Fay is the mortgage servicer, not the mortgagee. There are "no independent or separate allegations that [Fay] did anything wrong other than allegedly improperly seeking foreclosure as the agent for [the Trustee]. Accordingly, [Fay] is not a necessary party for the relief sought by [Kasarda]." *Powell v. Nationstar Mortg. LLC*, No. 4:16-cv-251, 2017 WL 191261, at *2 (E.D. Tex. Jan. 18, 2017). "Based upon the relief [Kasarda] is seeking, . . . the Court could enter a final judgment, assuming [Kasarda] prevails, against [the Trustee], giving [Kasarda] the full relief she has requested." *Schmelzer v. Nationstar Mortg., LLC*, No. 4:16-cv-389, 2016 WL 4368735, at *4 (E.D. Tex. Aug. 16, 2016) (cleaned up). Accordingly, Fay is a nominal party whose citizenship can be disregarded for diversity purposes.

* * *

Having concluded that diversity jurisdiction exists, I turn to the merits of the motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when there is evidence sufficient for a rational trier of fact to find for the non-moving party." *Schnell v. State Farm Lloyds*, 98 F.4th 150, 156 (5th Cir. 2024) (quotation omitted). "The movant has the burden of showing that there is no genuine issue of fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the movant makes such a showing, "the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Brandon v. Sage Corp.*, 808 F.3d 266, 270 (5th Cir. 2015) (quotation omitted). The nonmoving party "must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial to avoid

4

summary judgment." *Id.* (quotation omitted). At this stage, I "view all facts, and the inferences to be drawn from them, in the light most favorable to the nonmovant." *Id.* at 269 (quotation omitted).

## ANALYSIS

Kasarda brings claims for declaratory relief and injunctive relief. "The Declaratory Judgment Act, which authorizes a federal court to 'declare the rights and other legal relations of any interested party seeking such declaration,' is merely a procedural device and does not create any substantive rights or causes of action." *Smitherman v. Bayview Loan Servicing, LLC*, 727 F. App'x 787, 792 (5th Cir. 2018) (quoting 28 U.S.C. § 2201)). Similarly, "a request for injunctive relief is not itself a cause of action but depends on an underlying cause of action." *Cook v. Wells Fargo Bank, N.A.*, No. 3:10-cv-0592, 2010 WL 2772445, at *4 (N.D. Tex. July 12, 2010).

Kasarda's sole basis for obtaining a declaratory judgment and enjoining the foreclosure of the Property is that she disputes "the amount necessary to obtain a release of all liens against the Property." Dkt. 1-4 at 3. I will generously construe Kasarda's claim as one for breach of contract. Thus, to survive summary judgment, Kasarda must identify some genuine dispute of material fact that the asserted balance due of $174,070.53 is incorrect. Kasarda has not done this.

According to Kasarda's own evidence, the last payment she made on the note was on October 18, 2024, when she paid $22,000 to bring the loan current. *See* Dkt. 18-12 at 1. It is undisputed that Kasarda has been in default since October 23, 2024. Under the Loan Modification Agreement, Kasarda did not begin making principal and interest payments on the modified principal balance of $153,970.27 until March 23, 2022. At 14.55%, the interest accrued on a $153,970.27 balance is nearly $22,400 annually, not including escrow shortages, taxes, insurance, corporate advances, and default-related fees. Thus, even though Kasarda paid well over $100,000 after 2022, under the terms of the Loan Modification Agreement, much of that money likely went toward accrued interest, curing prior

delinquencies, escrow deficiencies, and servicing costs, rather than reducing the principal balance. Accordingly, there is nothing in the record to suggest that $174,070.53 is the incorrect amount owed under the Loan Modification Agreement.

Importantly, it is *Kasarda's* burden to supply evidence creating a genuine dispute of fact as to the accuracy of the asserted balance. To be clear, the economics of the Loan Modification Agreement are severe—it capitalized prior arrearages into principal, delayed principal reduction through five years of interest-only payments, extended the maturity date to 2057, and permitted the loan thereafter to increase to a very high adjustable interest rate. The practical effect of such a structure is that Kasarda paid substantial sums over time without greatly reducing the principal balance. Many borrowers would view such an arrangement as deeply unfavorable or even exploitative in practice.

I realize that Kasarda has paid $159,115.00 on the note since 2017. But the terms of the Loan Modification Agreement that Kasarda signed, under the worst-case-but-contractually-permitted scenario, would see her pay approximately $839,294 between 2017 and 2057, the extended maturity date. I sympathize with Kasarda's plight. I also sympathize that she signed the Loan Modification Agreement "out of ignorance and without consulting an attorney." Dkt. 18 at 4. Unfortunately, that is not a sufficient reason to upend a binding contract, even one where the terms heavily favor the lender.

I take no pleasure in granting summary judgment for Defendants. The characteristics of the Loan Modification Agreement—a very high adjustable interest rate, capitalization of arrears, interest-only payments for five years, extended maturity, repeated reinstatement cycles, and total repayment that is grossly disproportionate to the original principal—are the hallmarks of predatory lending. But that does not make the Loan Modification Agreement unlawful, and it does not create a genuine dispute of material fact as to the amount owed.

The record is clear: Kasarda has been in default since October 23, 2024. Her only basis for seeking relief is her confusion over the amount owed. Confusion over the amount owed, standing alone, does not create a viable claim or justify enjoining foreclosure. I must enter summary judgment for Defendants.

## CONCLUSION

For the reasons discussed above, I recommend that Defendants' motion for summary judgment (Dkt. 14) be granted.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this ___11th___ day of May 2026.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE